KEVIN G. McBRIDE (Cal. Bar No. 195866)
kmcbride@akingump.com
CLARK GORDON (Cal. Bar No. 306317)
cgordon@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
4 Park Plaza, Suite 1900
Irvine, CA 92614
Telephone:   949-885-4100
Facsimile:    949-885-4101

DAVID C. VONDLE (Cal. Bar No. 221311)
dvondle@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, DC 20006
Telephone:   202-887-4000
Facsimile:    202-887-4288

MICHAEL P. KAHN (*pro hac vice to be filed*)
mkahn@akingump.com
ANDREW SCHREIBER (*pro hac vice to be filed*)
aschreiber@akingump.com
SVETLANA PAVLOVIC (*pro hac vice to be filed*)
spavlovic@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park, 44th Floor
New York, NY 10036-6745
Telephone:    212.872.1000
Facsimile:     212.872.1002

Attorneys for Plaintiff
3M COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3M COMPANY,<br><br>               Plaintiff,<br><br>    v.<br><br>AMERICAN DENTAL EQUIPMENT, LLC d/b/a LION'S DENTAL SUPPLY a/k/a LION'S DENTAL SUPPLY & EQUIPMENT,<br><br>            Defendant. | Case No.  5:20-cv-2128<br><br>**COMPLAINT FOR**<br>1. Trademark Counterfeiting - 15 U.S.C. §§ 1114(1), 1116(D)<br>2. Trademark Infringement - 15 U.S.C. § 1114(1)<br>3. Unfair Competition, False Endorsement, False Association, and False Designation of Origin - 15 U.S.C. § 1125(A)(1)(A)<br>4. Trademark Dilution - 15 U.S.C. § 1125(C) |

1

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5. False Advertising - 15 U.S.C.
§ 1125(A)(1)(B)
6. Unfair Competition - Cal. Bus. Prof.
Code § 17200 et seq.
7. Unfair Competition and Passing Off
Under California Common Law

**DEMAND FOR JURY TRIAL**

Plaintiff 3M Company ("3M") by its attorneys, hereby complain against Defendant American Dental Equipment, LLC d/b/a Lion's Dental Supply a/k/a Lion's Dental Supply & Equipment (herein, "Defendant") and allege as follows:

## I.   OVERVIEW OF THE ACTION

1.      This is an action for trademark counterfeit, trademark infringement, unfair competition, and other Lanham Act violations—false endorsement, false association, and false designation of origin—arising from Defendant's ongoing misconduct using without authorization 3M's name and exploiting the COVID-19 pandemic for inappropriate commercial benefit.

2.      This lawsuit concerns Defendant's continued sale, and offer for sale, of counterfeit N95 respirator products falsely bearing 3M trademarks.  These counterfeit products are not authorized by 3M and do not meet the N95 standard.  Accordingly, Defendant's sale of these counterfeit respirators is jeopardizing the health and safety of unsuspecting first responders and innocent customers who believe they are purchasing 3M-branded respirator products that meet the N95 standard.  As a result, this unlawful activity is causing 3M irreparable harm.

3.      This action also concerns Defendant's unlawful efforts to deceive the public into believing Defendant has a business relationship or affiliation with 3M when in fact Defendant has never had any relationship with 3M.

4.      3M brings this action to help protect those on the frontlines of the fight against the pandemic and the public against Defendant's unlawful conduct and to protect the goodwill of its brand and products.

5.      Defendant has no prior or existing business relationship with 3M.  Indeed, 3M has never had any contact with Defendant prior to this action.

6.      Further, Defendant is not a 3M authorized distributor of 3M-branded respirator products or any other 3M products.

7.      Defendant is deceiving potential customers to enter into sham transactions, namely the sale of inappropriately marked counterfeit 3M-branded respirator products—

which are inferior in quality and which do not meet the N95 standard—at artificially high prices.

8. Defendant is trading on 3M's name, branding, intellectual property, products, reputation for quality, and substantial goodwill after decades of 3M's investment to bring 3M-branded respirator products of the highest quality to users around the world.

9. Defendant has knowingly created a fictitious association with 3M by utilizing 3M's branding, logo, and associated intellectual property to sell, and offer for sale, counterfeit respirator products bearing 3M trademarks.

10. This conduct violates the Lanham Act for selling counterfeit goods, infringing and diluting 3M's trademarks, and engaging in unfair competition.

11. Defendant also violates the State of California's laws against unfair competition, as well as the common law against passing off counterfeit respirator products bearing 3M trademarks as being affiliated or associated with 3M.

12. 3M respectfully requests the Court preliminarily and permanently enjoin Defendant from using 3M's name, logo, branding, all associated trademarks and other intellectual property, and from selling counterfeit 3M-branded respirator products bearing 3M trademarks or any other 3M products.

13. 3M further requests the Court order Defendant to cease all false claims of affiliation with and representation of 3M, and to disgorge any profits that Defendant has made from these sham transactions. 3M will donate any monetary recovery in this action to COVID-19 charitable organizations.

## II.    BACKGROUND

14. Throughout its history, 3M has been a leader in innovation and developing healthcare and safety products for industry and consumers. 3M's personal protective equipment ("PPE")—and in particular 3M's N95 respirator products—are considered the gold standard for public health protection.

15.     Over the last hundred-plus years, 3M has invested hundreds of millions of dollars to advertise and promote its 3M-branded products to consumers throughout the world (including, without limitation, its 3M-branded respirator products).  During this time, 3M continuously used its 3M trademarks in commerce.

16.     Through this substantial investment and its extensive and continuous use of the famous 3M trademarks, 3M has established goodwill and an acclaimed reputation among the general public and healthcare and safety professionals for its high quality, safe and reliable products.  Consequently, the 3M brand has become synonymous with high quality.

17.     First responders, healthcare professionals, and other workers on the frontlines of the pandemic have come to depend on the quality and dependability that the 3M brand signifies.

18.     Due to the unique, continued threat posed by COVID-19, and 3M's ability to play a leading role in helping to protect public health, 3M has increased its production of respirator products to unprecedented levels.  As a result, 3M is increasing its capacity to produce 3M-branded N95 respirator products and other respirator products to an annual rate of 2 billion.  3M's N95 respirator products are critical to those individuals and groups on the front lines combating COVID-19.

19.     3M has committed *not* to increase prices on its respirator products as a result of the COVID-19 pandemic.

20.     In light of substantial ongoing fraud involving 3M's PPE, 3M is working with law enforcement—including the U.S. Department of Justice, the Federal Bureau of Investigation, and federal and state Attorneys General—to help them investigate and prosecute offenders selling counterfeit goods and committing other misconduct.

21.     3M has also established the COVID-19 Fraud Hotline, so that the public can report cases of suspected fraud in connection with PPE products to 3M.

22.  Including this action, 3M has filed 20 lawsuits, and served dozens of cease and desist letters against numerous bad actors perpetrating fraud amidst the COVID-19 pandemic.

## III.  THE PARTIES

23.  Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the customers and markets it serves, including 3M-branded N95 respirator products.

24.  Defendant American Dental Equipment, LLC ("ADE") is a Limited Liability Company organized and existing under the laws of the State of California and having a principal place of business at 3410 La Sierra Ave., #F718, Riverside, California 92503.

25.  Upon information and belief, Defendant ADE does business as both Lion's Dental Supply and Lion's Dental Supply & Equipment ("Lion's Dental Supply"), which has a principal place of business at 16007 Jordana Circle, Riverside, California 92503.

## IV.  JURISDICTION AND VENUE

26.  The claims for trademark counterfeiting, trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I-V, *infra*, arise under the Lanham Act, namely, 15 U.S.C. §§ 1114(1), 1116(d), and 15 U.S.C. §§ 1051 *et seq.* Accordingly, this Court has original and subject matter jurisdiction over Counts I-V pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121(a).

27.  The claims for unfair competition and passing off asserted in Counts VI-VII *infra*, arise under California law, and are so related to the federal claims asserted in Counts I-V, *infra*, that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Counts VI-VII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

28.     This Court also has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between the parties and, on information and belief, the amount in controversy exceeds $75,000.

29.     Defendant has purposefully availed itself of the privilege of transacting business within the State of California, including in this District.  Defendant is located in Riverside, California, which is located in this District.  Specifically, Defendant has committed and intentionally directed tortious acts towards residents of the State of California, including in this District.  Defendant has maintained and operated a website where it markets, advertises, and sells respirator products to California residents, including counterfeit respirator products bearing 3M's trademarks.  3M's claims arise out of and relate to Defendant's transaction of business and tortious acts committed within the State of California, including in this District.  Accordingly, this Court has personal jurisdiction over Defendant.

30.     Defendant is located in Riverside, California, which is located in this District.  For purposes of venue, Defendant resides at this address in the State of California, within this District.  Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

31.     A substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District within the State of California.  Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

32.     Defendant is subject to personal jurisdiction in the Central District.  Accordingly, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## V.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.     3M Company

33.     3M has grown from a small-scale mining company founded over a century ago to being a recognized leader in providing scientific, technical, and marketing innovations throughout the world.  3M actively safeguards and protects its intellectual

property.  This includes maintaining substantial numbers of federal trademark registrations.

### 1.    3M's Brand

34.    The 3M brand is associated with products for a wide range of medical supplies, devices, and safety products, to include respirator products such as the 3M-branded N95 respirator products.  As a result, 3M-branded products are highly visible throughout doctors' offices, hospitals, and other medical facilities where patients and medical professionals rely upon the quality and effectiveness associated with the 3M brand.

### 2.    The Famous "3M" Respirator Products

35.    Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-branded products to customers throughout the world (including, without limitation, its 3M-branded N95 respirators) under the standard-character mark "3M" and the 3M logo (collectively, the "3M Trademarks") shown here:



36.    Consumer, medical, industrial, and safety products offered for sale under the 3M brand and 3M Trademarks have enjoyed substantial commercial success (including, without limitation, 3M-branded N95 respirator products).  In 2020 alone, 3M's sales have been in the billions of dollars, much of which included products sold utilizing the 3M Trademarks.

37.    3M-branded products, with the associated 3M Trademarks, regularly are covered in broadcast and digital media and have received substantial critical acclaim over the years.

38.     Based on the foregoing, customers uniquely associate the 3M Trademarks with 3M; customers recognize the 3M Trademarks as identifying 3M as the exclusive source of goods and services offered under its trademarks.

39.     Based on the foregoing, the 3M name, 3M brand, and associated 3M Trademarks have become famous among customers in California and throughout the United States.

40.     Apart from 3M's common-law rights in its famous 3M Trademarks, 3M has also obtained numerous federal trademark registrations, including, without limitation:

A.     (i)  U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M trademark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration").  *See* Exhibit A.

B.     (ii)  U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"). *See* Exhibit B.

C.     (iii)  U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration").  *See* Exhibit C.

41.     Each of the foregoing 3M Trademark Registrations remains in effect, is currently valid, and on the United States Patent and Trademark Office ("USPTO") Principal Trademark Register.

42.     Each of the foregoing 3M Trademark Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065.

43.     As such, each 3M Trademark Registration constitutes conclusive evidence of:

A.     (i)  3M's ownership of the 3M Trademarks

B.     (ii)  the validity of the 3M Trademarks

C.   (iii)  the validity of the 3M Trademarks' Registrations

D.   (iv)  3M's exclusive right to use the 3M name, 3M brand, and 3M Trademarks throughout the United States

### 3.   *3M's Efforts to Help Combat the COVID-19 Pandemic*

44.   As detailed on 3M's website, 3M is providing its 3M-branded N95 respirator products to the public and first responders helping combat the COVID-19 pandemic:



45.   Legitimate 3M-branded N95 respirator products reduce exposure to potentially harmful airborne particles and contamination when worn and used appropriately.

46.   However, as demand has skyrocketed for PPE, and in particular 3M-branded N95 respirator products, in the midst of the pandemic, bad actors have sought to exploit the situation.

47.   To help protect the public and healthcare professionals—on the front lines of the COVID-19 pandemic—from trademark counterfeiting, misleading and

substantially inferior PPE products, as well as to protect 3M's goodwill and reputation in its 3M brand, 3M is working diligently with law enforcement authorities, online e-commerce retailers, and others to combat unethical and unlawful business practices related to 3M-branded N95 respirator products.

48.   As shown below, additional examples of 3M's efforts to combat trademark counterfeiting, trademark infringement, and other unlawful activities during the COVID-19 pandemic include:

A.   3M posted on its website the U.S., per respirator, single case list price for the most common models of its 3M-branded N95 respirator products so that the public can identify and avoid inflated pricing. *See* https://multimedia.3m.com/mws/media/1862179O/get-the-facts-n95-respirator-pricing.pdf:

**3M has not changed the prices we charge for 3M respirators as a result of the COVID-19 outbreak.**

**U.S. List Prices for Common N95 Respirator Models**

These list prices are per respirator.

These list prices represent suggested prices to end customers. 3M's prices to its authorized distributors are lower than these list prices.

An end customer's actual prices may be lower than these list prices, as negotiated between the end customer and its chosen distributor.

List prices for these models sold in Canada are similar on a currency-adjusted basis.

| Model | Type | List Price (USD) |
|---|---|---|
| 1804 | Surgical | $0.68 |
| 1804S | Surgical | $0.68 |
| 1860 | Surgical | $1.27 |
| 1860S | Surgical | $1.27 |
| 1870+ | Surgical | $1.78 |
| 8210 | Standard | $1.02 - $1.31 |
| 8210Plus | Standard | $1.18 - $1.50 |
| 8210V | Standard | $1.48 - $1.88 |
| 8110S | Standard | $1.08 - $1.37 |
| 8200 | Standard | $0.63 - $0.80 |
| 8511 | Standard | $2.45 - $3.11 |
| 9105 | Standard | $0.64 - $0.81 |
| 9105S | Standard | $0.64 - $0.81 |
| 9210+ | Standard | $1.40 - $1.78 |
| 9211+ | Standard | $2.68 - $3.40 |

B.   3M created a form on its website as well as a telephone hotline that the public can use to report suspected fraud.  Additionally, 3M has created online resources to help spot incidents of price-gouging, identify counterfeiting, and ensure products are from 3M authorized distributors.

1
2
3
4
5
6
7
8
9



10   C.   The 3M website further allows the public and interested parties to
11        track 3M's enforcement activities against fraudulent activity in
12        connection with 3M products, such as respirator products, during the
13        COVID-19 pandemic.  *See* https://news.3m.com/English/press-
14        releases/press-releases-details/2020/3M-Expands-Actions-Globally-
15        to-Fight-COVID-Fraud-Counterfeiting-and-Price-
16        gouging/default.aspx:
17

18



19
20
21
22
23
24
25
26

27   D.   To date, 3M has investigated more than 7,700 fraud reports globally,
28        filed 19 lawsuits, and has been granted nine temporary restraining

orders and seven preliminary injunctions.  Additionally, over 13,500 false or deceptive social media posts, more than 11,500 fraudulent e-commerce offerings and at least 235 deceptive domain names have been removed.  *See* https://news.3m.com/English/press-releases/press-releases-details/2020/3M-Expands-Actions-Globally-to-Fight-COVID-Fraud-Counterfeiting-and-Price-gouging/default.aspx:



## B.    Defendant's Misconduct

49.    Even though 3M has been combatting counterfeiting and other unlawful activities seeking to exploit the demand for 3M-branded N95 respirator products during the pandemic, bad actors continue to take advantage of the public and unsuspecting users of respirator products.  Defendant is engaged in such misconduct, which risks public health, impairs the supply chain supporting healthcare workers and others fighting the pandemic, and damages 3M's brand and goodwill.

50.    Defendant's misrepresentations and infringement of the 3M Trademarks are likely to confuse the public into falsely believing that Defendant is affiliated with 3M.

51.     On information and belief, Defendant is an internet-based reseller of healthcare goods, active since at least 2003.

52.     On information and belief, Defendant operates out of Riverside, California and supplies all manner of healthcare products—including respirators—to doctors, nurses, and other medical professionals.

53.     On information and belief, during the pandemic, Defendant has been selling counterfeit respirator products bearing 3M Trademarks, amongst other items, in California and across the country.

### 1.     *Defendant's Fraudulent Activity in Connection with COVID-19 Pandemic*

54.     On information and belief, beginning at least as early as June 2020, Defendant began offering to sell counterfeit respirators branded with 3M Trademarks and supposedly made by 3M.  Specifically, Defendant has been offering to sell counterfeit 3M-branded respirator products for approximately double the average of 3M's list price. *See supra* paragraph 48(A) (noting price of 3M-branded 8210 respirator at $1.02-$1.31 per unit).

55.     Defendant's website states that the reseller "offers the highest quality of Dental Operatory Equipment & Supplies on the market today.  Since 2003, we have provided superior service and products to our customers and have assisted them in achieving their goals." *See, e.g.*, http://lionsdentalsupply.com/, screenshot attached as Exhibit D.

56.     Defendant's website further states "[w]e have 3M N95 Particulate Respirator Face Masks."  Further, Defendant's website contains links to 3M-ESPE, which is the former name of the 3M division that focuses on supplying products to dentists and oral care hygienists.  *See* Exhibit E.

57.     Defendant's website contains a subsection devoted to "Disposable Surgical Medical Face Masks and N95 Respirators."  *See* http://lionsdentalsupply.com/face-

masks.html, screenshot attached as Exhibit F.  This subsection states that Defendant has "all these Face Masks in Stock and Ready to ship.  1 to 5 Days Delivery Time."

58.   Defendant offers at least eight respirator products bearing 3M Trademarks, including the following 3M-branded respirator models:  3M 8210 N95 Particulate Respirator Masks; 3M 8210V N95 Particulate Respirator Masks; 3M 8210MX N95 Particulate Respirator Masks; 3M 8511MX N95 Particulate Respirator Masks; 3M 9501V+ KN95 Particulate Respirator Earloop Mask With Exhaust Valve; 3M 9502+ KN95 Particulate Respirator Masks; 3M 9502V+ KN95 N95 Particulate Respirator Masks With Valve; 3M 9542V + KN95 N95 Particulate Respirator Masks With Valve.

59.   Defendant's webpages for each of these products contain the following warning:  "As there is a world wide shortage of Disposable Surgical Medical Face Masks Because of the CoronaVirus.  These are Special Order and there are no returns. The sale of this item is subject to regulation by the U.S. FDA and therefore is Non Returnable.  Once the Order is Placed we can not Cancel the Order as it goes to the Warehouse that ships the product out as fast as possible to Help those in Need."  *See, e.g.*, http://lionsdentalsupply.com/files/134336489.htm, screenshot attached as Exhibit G.

60.   Defendant's webpages for each of these products contain the following product description:  "The respirator incorporates 3M proprietary technology with advanced electrostatically charged microfiber filter media designed for ease of breathing."  *See, e.g.*, *id*.

61.   Defendant's webpage shows that Defendant has unlawfully profited from its deception, as the 3M 8210 N95 Particulate Respirator Masks are indicated to be "Sold Out" in all quantities—for both a "1 pack" and "20 pack."  *See id.*  Defendant's webpage states that a customer would be charged "Regular $37.99" for a 20 pack of this supposed 3M respirator, or just under $1.90 per unit.  By contrast, 3M's established unit prices for its 8210 respirator product are between $1.02 - $1.31 per unit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    62.    Likewise, Defendant's webpage shows the 3M 9501V+ KN95 Particulate

19  Respirator Earloop Mask With Exhaust Valve as being "Sold Out" in all quantities—for

20  a "2 pack," "10 pack," and "25 pack." *See*

21  http://lionsdentalsupply.com/files/134291661.htm, screenshot attached as Exhibit H.

22  Defendant's webpage states that a customer would be charged a "Regular $37.99" price

23  for a 20 pack of this supposed 3M respirator.

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20       63.     Defendant's webpage shows the 3M 8210V N95 Particulate Respirator

21  Masks as being on "Sale" for $4.59, down from a "Regular $7.99" price."  *See*

22  http://lionsdentalsupply.com/3m-8210v-n95-niosh-approved-particulate-respirator.html,

23  screenshot attached as Exhibit I.  Defendant's webpage states that a customer would be

24  charged the following prices:  1 Pack - $5.99 each, 10 pack - $5.59 each, 40 pack -

25  $4.99 each, 80 pack - $4.59 each, for these supposed 3M respirators.

26
27
28

64.     Defendant's webpage shows the 3M 8210MX N95 Particulate Respirator Masks as being on "Sale" for $4.29, down from a "Regular $9.99" price." *See* http://lionsdentalsupply.com/3m-8210-n95-niosh-approved-particulate-respirator.html, screenshot attached as Exhibit J.  Defendant's webpage states that a customer would be charged the following prices:  1 Pack - $5.99 each, 20 pack - $5.29 each, 60 pack - $4.79 each, 100 pack - $4.29 each, for these supposed 3M respirators.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



8210*Plus*/8210*Plus*MX/8210/8210MX/07048/8110S

 

18   65.   Defendant's webpage shows the 3M 8511MX N95 Particulate Respirator

19   Masks as being on "Sale" for $4.59, down from a "Regular $7.99" price."  *See*

20   http://lionsdentalsupply.com/3m-8511-n95-niosh-approved-particulate-respirator.html,

21   screenshot attached as Exhibit K.  Defendant's webpage states that a customer would be

22   charged the following prices:  1 Pack - $5.99 each, 10 pack - $5.59 each, 40 pack -

23   $4.99 each, 80 pack - $4.59 each, for these supposed 3M respirators.

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  66.   Defendant's webpage shows the 3M 9502+ KN95 Particulate Respirator

16  Masks as being on "Sale" for $2.59, down from a "Regular $37.99" price." *See*

17  http://lionsdentalsupply.com/3m-9502--kn95-medical-particulate-respirator-mask.html,

18  screenshot attached as Exhibit L.  Defendant's webpage states that a customer would be

19  charged the following prices:  Single - $4.69 each, 10 pack - $3.69 each, 50 pack - $2.99

20  each, 100 pack - $2.59 each, for these supposed 3M respirators.

21
22
23
24
25
26
27
28

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17  67.   Defendant's webpage shows the 3M 9502V+ KN95 Particulate Respirator

18  Masks With Valve as for a discounted $2.79, down from a "Regular $37.99" price.  *See*

19  http://lionsdentalsupply.com/3m-9502v--kn95-medical-particulate-respirator-mask.html,

20  screenshot attached as Exhibit M.  Defendant's webpage states that a customer would be

21  charged the following prices:  1 pack - $4.59, 25 pack - $3.89 each, 50 pack - $3.29

22  each, 100 pack - $2.79 each, for these supposed 3M respirators.

23
24
25
26
27
28



68.    Defendant's webpage shows the 3M 9542V+ KN95 Particulate Respirator Masks With Valve for a "Sale" price of $4.99, down from a "Regular $37.99" price. *See* http://lionsdentalsupply.com/3m-9542v--kn95-medical-particulate-respirator-mask.html, screenshot attached as Exhibit N.  Defendant's webpage states that a customer would be charged the following prices:  1 pack - $5.99, 20 pack - $5.29 each – Total $105.80, 40 pack - $4.99 each – Total $199.60 for these supposed 3M respirators.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18          **2.    Third Party Complaints**

19          69.    3M received a complaint to its COVID-19 Fraud Hotline from a customer

20   after receiving what appeared to be a counterfeit 3M 8210 N95 Medical Particulate

21   Respirator Masks 20 pack for $179.75 (i.e., a price at least **6-7 times** 3M's published list

22   price for the same product) from Defendant from an order the customer placed.  3M

23   conducted an investigation and determined that Defendant was not a 3M authorized

24   distributor and was engaging in counterfeit respirator production and/or distribution due

25   to product and packaging anomalies on the products received by the customer.

26          70.    In addition, semi-anonymous customers of Defendant appear to have

27   posted online about having been "sold [] counterfeit 3M n95 masks.  [That] are flimsy

28

and thin." *See, e.g.*, https://reviews.birdeye.com/lions-dental-supply-149210548691460, screenshot attached as Exhibit L.

# VI.   CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF

*Trademark Counterfeiting - 15 U.S.C. §§ 1114(1), 1116(d)*

71.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-70 of the Complaint as though set forth fully herein.

72.     Count I is a claim for trademark counterfeiting under U.S.C. §§ 1114(1), 1116(d).

73.     Defendant is using spurious designations that appear to be identical to the 3M Trademarks.

74.     Defendant has been using these spurious designations that appear to be identical to 3M Trademarks for the purpose of advertising, promoting, offering for sale, and selling counterfeit 3M-branded respirator products.

75.     Defendant has used these spurious designations that appear to be identical to 3M Trademarks in commerce knowing they are counterfeit to advertise, promote, offer for sale, and sell 3M-branded respirator products including, for example, on its website sales portal listing the products that Defendant purportedly has available for sale.

76.     Defendant's use of the spurious designations that appear to be identical to 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, and/or deception about whether Defendant's products originate with, and/or are sponsored or approved by, and/or offered under a license from, 3M.

77.     Based on 3M's longstanding and continuous use of its 3M Trademarks in United States commerce, as well as the federal registration of the 3M Trademarks that are now incontestable, Defendant had actual and constructive knowledge of 3M's

superior rights in and to the 3M Trademarks when Defendant began using spurious designations that appear to be identical to 3M Trademarks as part of its efforts to deceive consumers and the general public.

78.     Upon information and belief, Defendant adopted and used the 3M Trademarks in furtherance of Defendant's willful and deliberate scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Trademarks, including, without limitation, 3M-branded respirator products.

79.     Upon information and belief, Defendant has made, and may continue to make, ill-gotten profits and gain from its unauthorized use of the 3M Trademarks, to which Defendant is not entitled at law or in equity.

80.     Defendant's acts and conduct complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1) and 1116(d).

81.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale non-3M branded respirator products at artificially inflated prices during a global pandemic when these products are playing a critical role in helping to protect public health.

82.     The acts of Defendant described herein have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

83.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

84.     3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

*Trademark Infringement - 15 U.S.C. § 1114(1)*

*Infringement of the Federally Registered 3M Trademarks*

85.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-84 of the Complaint as though set forth fully herein.

86.     Count II is a claim for trademark infringement under 15 U.S.C. § 1114.

87.     3M is the exclusive owner of the federally registered and incontestable 3M Trademarks.

88.     3M has the exclusive right to use each of the 3M Trademarks in United States commerce for advertising, promoting, offering for sale, and selling 3M-branded N95 respirator products.

89.     3M's exclusive rights in the 3M Trademarks predate any rights that Defendant could establish in any potential trademark that consists of "3M" in whole and/or in part.

90.     The 3M Trademarks are fanciful and/or arbitrary when used for 3M-branded respirator products, making the 3M Trademarks inherently distinctive.

91.     The 3M Trademarks identify 3M as the exclusive source of goods, services, and products offered under the 3M Trademarks (including 3M-branded respirator products).  Consequently, the 3M Trademarks have acquired distinctiveness.

92.     Defendant is actively and unlawfully using the 3M Trademarks in commerce to advertise, promote, offer for sale, and sell 3M-branded respirator products, including in advertisements and electronic communications to healthcare professionals and vendors in connection with the counterfeit 3M-branded respirator products that Defendant allegedly has available for sale online.

93.     Defendant's use of the 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, customer confusion, mistake, and/or deception about whether Defendant is 3M; and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M; and/or has access to products that 3M offers under its 3M Trademarks, including 3M-branded respirator products.

94.     Defendant's use of the 3M Trademarks in commerce in connection with the advertising, offering for sale, and/or sale of 3M respirator products, as alleged herein, is causing, and is likely to continue to cause, customer confusion about whether Defendant's products are affiliated with 3M and/or respirator products that 3M offers under its 3M Trademarks.  Defendant's misconduct further confuses the public into believing that Defendant's respirator products either originate from, or are approved by, 3M.

95.     3M has never consented to Defendant's use of its famous 3M Trademarks.

96.     Defendant had both actual and constructive knowledge of 3M's superior rights in its 3M Trademarks due to 3M's decades-long, continuous use of its 3M Trademarks in United States commerce, and 3M's federal registration of the 3M Trademarks.

97.     Defendant made use of the 3M Trademarks in furtherance of Defendant's willful scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Trademarks, including 3M-branded respirator products.

98.     On information and belief, Defendant profited from its infringement of the 3M Trademarks.

99.     Defendant's acts and conduct described herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1)(a).

100.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is worsened due to Defendant's taking advantage of an unsuspecting public and medical health professionals during a global pandemic—when 3M's respirator products are critical to those frontline workers battling the COVID-19 pandemic.  Defendant's misconduct directly creates a likelihood of confusion about 3M's role in the marketplace for respirator products.

101.   3M has been damaged by Defendant's misconduct in an amount to be proven at trial and donated to charitable COVID-19 relief efforts.

102.   3M requests the relief set forth in the Prayer for Relief below.

### THIRD CLAIM FOR RELIEF

*Unfair Competition, False Endorsement, False Association, And False Designation Of Origin - 15 U.S.C. § 1125(a)(1)(A)*

*Use of the 3M Trademarks*

103.   3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-102 as though set forth fully herein.

104.   Count III is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

105.   On information and belief, Defendant's misconduct described herein constitutes unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

106.   On information and belief, Defendant's use of 3M's famous name and 3M Trademarks to advertise, market, offer for sale, and/or sell purported 3M-branded respirator products to customers at artificially inflated prices, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

107.   Defendant also falsely represented itself as affiliated, connected, endorsed by, and/or associated with 3M and/or products that 3M offers under its 3M Trademarks, including, 3M-branded respirator products.  Defendant sought to create the false impression that the products they purported to offer to healthcare workers and others originate from, and/or are sponsored or approved by, and/or offered under a license from, 3M.

108.   3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.

109.   3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

110.   3M requests the relief set forth in the Prayer for Relief below.

**FOURTH CLAIM FOR RELIEF**

*Trademark Dilution - 15 U.S.C. § 1125(c)*

*Dilution of the Famous 3M Trademarks*

111.   3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-110 of the Complaint as though set forth fully herein.

112.   Count IV is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

113.   The 3M Trademarks are famous.  The 3M Trademarks were famous before, during, and after the time Defendant began using the 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including 3M-branded respirator products).

114.   Defendant's use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-branded respirator products) dilutes the distinctive quality of the famous 3M Trademarks, such that the famous 3M brand name and 3M Trademarks' established value and selling power will likely be diminished.

115.   Defendant's use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including, without limitation, 3M-branded respirator products) dilutes the distinctive quality of the famous 3M name and 3M Trademarks, such that the famous 3M Trademarks' ability to identify 3M as the exclusive source of products offered under the 3M Trademarks (including 3M-branded respirator products) will be diminished.

116.   Defendant's use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of

counterfeit products (including 3M-branded respirator products) at artificially inflated prices, in general, and during a global pandemic such as COVID-19 specifically, dilutes the reputation of the famous 3M Trademarks, such that the famous 3M Trademarks' established ability to indicate the superior quality of Products offered under such marks (including 3M-branded respirator products), will be diminished.

117.   Defendant's misconduct also threatens to harm the reputation of the 3M Trademarks, constituting dilution by tarnishment of the famous 3M Trademarks.

118.   Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

119.   3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect public health.

120.   3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

121.   3M requests the relief set forth in the Prayer for Relief below.

### FIFTH CLAIM FOR RELIEF

*False Advertising - 15 U.S.C. § 1125(a)(1)(B)*

122.   3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-121 of the Complaint as though set forth fully herein.

123.   Count V is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

124.   Through its externally facing webpage, and on information and belief through email advertisements, Defendant made statements to the general public—and medical health professionals—that contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of

COMPLAINT

Defendant and/or the products that Defendant allegedly had available for sale and constitute commercial advertising and/or commercial promotion.

125.   Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

126.   3M has suffered, and will continue to suffer, irreparable harm from Defendant's misconduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect the public health.

127.   3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

128.    3M requests the relief set forth in the Prayer for Relief below.

## SIXTH CLAIM FOR RELIEF

*Unfair Competition - Cal. Bus. Prof. Code § 17200 et seq.*

*Use of the 3M Trademarks*

129.   3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-128 of the Complaint as though set forth fully herein.

130.   Count VI is a claim for unfair competition in violation of California Business and Professions Code § 17200 *et seq.* California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200 *et seq.*

131.   Defendant's online advertising, marketing, and promotion of respirator products with the 3M Trademarks was intended to—and did—mislead 3M's customers and the public into believing that such products were manufactured or distributed by 3M, or otherwise authorized for manufacture or distribution by 3M.

132.   Taken together, Defendant's advertising, marketing, and promotion of products, through its use of the 3M Trademarks, constitutes unlawful, unfair, and

fraudulent business practices in violation of California Business & Professions Code § 17200 *et seq.*

133.   Due to Defendant's unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, 3M suffered injury-in-fact and lost profits due to Defendant's violation of California's Unfair Competition Law, which provides standing under § 17204 of the California Business and Professions Code § 17200 *et seq*.

134.   Defendant's business practices constitute unfair competition in violation of California Business and Professions Code § 17200 *et seq*., as they are likely to deceive and mislead the public.

135.   Defendant has caused the dilution of the distinctive quality of the 3M Trademarks and lessened the capacity of the 3M Trademarks to identify and distinguish 3M's products and services.

136.   Defendant's conduct has caused, and will continue to cause, irreparable harm to 3M.

137.   On information and belief, Defendant sold or offered to sell purported 3M-branded respirator products—for a price more than 10 percent greater than the price charged by Defendant for those goods.  As result of Defendant's unlawful conduct, 3M is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount to be proved at trial, applicable interest, and recovery of all reasonable attorneys' fees and costs incurred herein, all of which will be donated to charitable COVID-19 relief efforts.

## SEVENTH CLAIM FOR RELIEF

*Unfair Competition and Passing Off Under California Common Law*

138.   3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-137 of the Complaint as though set forth fully herein.

139.   Count VII is a claim under the California common law tort of unfair competition and covers situations where a defendant attempts to pass off its goods or

services as those of someone else by replicating the trademark owner's product, name, advertising, or marks.

140.   This is a cause of action arising out of Defendant's business misconduct, which is contrary to honest practice in commercial matters, in violation of California common law.

141.   The 3M name and the 3M Trademarks are famous trademarks in the United States, including in the State of California.

142.   Defendant began using the 3M Trademarks in connection with the advertising, marketing, and promotion of products subsequent to the 3M Trademarks becoming famous.

143.   Defendant's unauthorized use in commerce of the 3M Trademarks is likely to cause customer confusion or to deceive the public into believing that Defendant's products are sponsored by or originate from 3M, or are otherwise affiliated with or approved by 3M.

144.   As a direct and proximate result of Defendant's wrongful acts, 3M has suffered and continues to suffer and/or is likely to suffer damage to the 3M Trademarks, trade name, business reputation, and goodwill.  Defendant will continue, unless restrained, to pass off its sale of counterfeit respirators bearing the 3M Trademarks and to conduct its business and offer such products using the 3M Trademarks and will cause irreparable damage to 3M.  3M has no adequate remedy at law is entitled to an injunction restraining Defendant from engaging in further acts of unfair competition.

145.   3M is further entitled to recover from Defendant the actual damages it has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's wrongful acts.  Any such damages will be donated to any monetary recovery in this action to COVID-19 charitable organizations.

146.   3M requests further relief set forth in the Prayer for Relief below.

# **PRAYER FOR RELIEF**

**WHEREFORE**, based on Defendant's conduct complained of herein, 3M asks this Court:

A.      To enter an Order, finding in 3M's favor on each Claim for Relief asserted herein;

B.      For Claims I through V under the Lanham Act for federal trademark counterfeiting, federal trademark infringement, unfair competition, false endorsement, false association, and false designation of origin, trademark dilution, and false advertising, pursuant to 15 U.S.C. § 1116:

      1.      To preliminarily and permanently enjoin Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Trademarks (or any other trademark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-branded respirator products;

      2.      To preliminarily and permanently enjoin Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing themselves as being distributors, authorized retailers, and/or licensees of 3M and/or any of 3M's products (including, without limitation, 3M-branded respirator products) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products and/or 3M's officers or employees; and

      3.      To order Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a

report in writing under oath setting forth in detail the manner and form in which each Defendant has complied with the injunction;

4. Pursuant to 15 U.S.C. § 1117:

    a. To order Defendant to provide 3M with a full accounting of all manufacture, purchase, distribution, and sale of products under the 3M Trademarks (including, without limitation, 3M-branded respirator products), as well as all profits derived therefrom;

    b. To order Defendant to disgorge and pay to 3M – for donation to charitable COVID-19 relief efforts and to reimburse defrauded customers – all of Defendant's profits derived from the sale of infringing goods offered under the 3M Trademarks (including, without limitation, 3M-branded respirator products);

    c. To award 3M— for donation to charitable COVID-19 relief efforts —treble damages in connection with Defendant's infringement of the 3M Trademarks;

    d. To award 3M—for donation to charitable COVID-19 relief efforts—any statutory damages that may be elected by 3M in connection with Defendant's use of counterfeit trademarks;

    e. To find that Defendant's acts and conduct complained of herein render this case "exceptional"; and

    f. To award 3M— for donation to charitable COVID-19 relief efforts —its costs and reasonable attorneys' fees incurred in this matter;

5. Pursuant to 15 U.S.C. § 1118, to order the destruction of any unauthorized goods and materials within the possession, custody, and control of Defendant that bear, feature, and/or contain any copy or colorable imitation of the 3M Trademarks;

C. For Claims VI and VII under California Statutes and Common Law:

1.     To award 3M—for donation to charitable COVID-19 relief efforts—treble damages in connection with Defendant's illegal acts;

2.     To award 3M—for donation to charitable COVID-19 relief efforts—its costs and reasonable attorneys' fees incurred in this matter;

3.     To preliminarily and permanently enjoin Defendant from falsely representing itself as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M respirator products, and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or its respirator products;

D.     To award such further restitution as authorized by law, which 3M will donate to charitable COVID-19 relief efforts;

E.     To award 3M pre-judgment and post-judgment interest against Defendant, which 3M will donate to charitable COVID-19 relief efforts;

F.     For any preliminary and permanent injunctive relief, that such relief extend to Defendant's agents, servants, employees, officers, and all persons and entities in active concert and participation with Defendant;

G.     To order Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.     To award 3M such other relief that the Court deems just and equitable.


Dated:  October 9, 2020           AKIN GUMP STRAUSS HAUER & FELD LLP


                              By: /s/ *Kevin G. McBride*
                                   Kevin G. McBride

                              Attorneys for Plaintiff 3M Company

1

### DEMAND FOR JURY TRIAL

2          3M hereby requests a trial by jury for all issues so triable, pursuant to Fed. R. Civ.

3    P. 38(b) and 38(c).

4

5      Dated:  October 9, 2020                    AKIN GUMP STRAUSS HAUER & FELD LLP

6

7                                                 By: _/s/ *Kevin G. McBride*_____
                                                      Kevin G. McBride

8                                                 Attorneys for Plaintiff 3M Company

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28